THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| K. MANPREET CHAHAL,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*,<br><br>Defendants. | Case No. C18-312-RAJ<br><br>**ORDER** |

Plaintiff K. Manpreet Chahal ("Plaintiff") seeks reversal of a decision by Defendant United States Citizenship and Immigration Services ("USCIS") on Plaintiff's I-130 petitions for her two siblings. Dkt. # 1. Plaintiff now moves for summary judgment. Dkt. # 19. Defendants responded, and also cross-moved for summary judgment. Dkt. # 22. The parties both filed replies to the competing motions. Dkt. ## 23, 24.

After considering the Administrative Record (Dkt. ## 8, 10) and the parties' arguments, for the following reasons, the Court **DENIES** Defendants' Cross-Motion and **GRANTS** Plaintiff's Motion.

### I. BACKGROUND

Plaintiff is a United States citizen who resided at 1221 Mottman Rd SW Apt C-104, Tumwater, Washington from July 2003 to July or August 2010. Dkt. # 19, Ex. 1.

ORDER – 1

In 2006, Plaintiff filed I-130 immigrant visa petitions for the benefit of her siblings, Gurpreet Hayer ("Gurpreet") and Sharanjit Kaur ("Sharanjit"), who resided in India. ARI-6; ARII-9. Plaintiff reportedly received receipt notices from USCIS at this address. *Id*.; ARI-6; ARII-9. At USCIS, the petitions were transferred for adjudication from the California Service Center to the San Jose Field Office for Gurpreet and to the San Francisco Field Office for Sharanjit. ARI-7; ARII-5.

The San Jose USCIS office then created a Request for Evidence ("RFE") dated August 6, 2009 for Gurpreet's petition, requesting additional evidence of the birth of Gurpreet, including his parents' names. ARII-7. Similarly, the San Francisco USCIS office issued an RFE dated September 3, 2009 for Sharanjit's petition. ARI-4. This RFE requested a certified marriage certificate of the petitioner and the beneficiary, the naturalization certificate of the Petitioner, and a copy of the birth certificates of all children of the beneficiary. ARI-4.[1]

While both parties agree that the Offices "issued" the RFEs, the parties dispute whether the RFEs were actually mailed. This issue is the central dispute in this lawsuit. In either case, USCIS did not receive a response to either RFE. On November 12 and 30, 2009, USCIS issued two Notices of Decision ("NODs") stating that Gurpreet and Sharanjit's petitions, respectively, were denied due to abandonment. ARI-3, ARII-5. The parties also dispute whether these NODs were actually mailed.

Plaintiff moved from her Mottman Road address in 2010 and filed a change of address with USPS and USCIS on August 9, 2010. ARII-1. Plaintiff claims she received from USCIS a confirmation about her change of address in 2010 but did not receive the earlier RFE's dated in 2009, nor the subsequent denials that were mailed later in 2009. Dkt. # 19, Ex. 1. Plaintiff moved again in 2012 and claims to have called the USCIS National Customer Service Center ("NCSC") to confirm this, but did

---

[1] The record notes that on August 31, 2009, the RFE for Sharanjit was revised, crossing off the request for the certified marriage certificate for Sharanjit's parents. ARI-5.

ORDER – 2

not receive written confirmation of this, which prompted her to make repeated calls "every few months" to inquire about the case status. *Id*. Plaintiff claims that each time she was told that she would receive a letter from USCIS within 90 days but was never informed about the denied petitions. *Id*.

In January 2017, Plaintiff sent the USCIS a letter inquiring as to the status of the outstanding I-130 petitions. ARI-1; ARII-3. Thereafter, allegedly after being told by a USCIS employee that there was a problem with her petitions, Plaintiff filed a FOIA request to determine what had happened in her cases. Dkt. # 19, Ex. 1.

On February 28, 2018, Plaintiff filed the Complaint in this suit. Dkt. # 1. In April 2018, Plaintiff filed new I-130 petitions for her siblings, (WAC1890239126 for Gurpreet, WAC1890239127 for Sharanjit). Dkt. # 19, Exs. 2, 3. For each of these second petitions, Plaintiff contends that she submitted the evidence requested by the RFEs in the previous petitions, including the required birth certificates. Dkt. # 19, Ex. 1. On December 6, 2018, Plaintiff's second I-130 petition for her sister Sharanjit was approved by USCIS, though as of the date of this Order, the second petition for Gurpreet remained outstanding. Dkt. # 27.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Judicial review of administrative decisions is governed by the Administrative Procedure Act. *See* 5 U.S.C. § 706. In the context of a case where a party is seeking review of an administrative decision, "[a] district court is not required to resolve any factual issues when reviewing administrative proceedings." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). "Instead, the district court's function is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Boyang, Ltd. v. I.N.S.*, 67 F.3d 305 (9th Cir. 1995). Accordingly, summary judgment "is an

appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Occidental Eng'g Co.*, 753 F.2d at 770. In APA reviews, the court's review is based on the administrative record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883–84 (1990).

### III. DISCUSSION

To enter and remain in the United States, Congress requires each alien to possess a valid visa conferring immigrant or non-immigrant status. 8 U.S.C. §§ 1182(a)(7)(A) and (B). Congress has established several different categories of "immigrant visas." The family-based immigrant visa categories require a United States citizen or lawful permanent resident "petitioner" to file a Form I–130 with USCIS to classify the intended alien beneficiary under one of the congressionally-created immigrant relative categories. 8 U.S.C. §§ 1153(a)(1), 1154(a)(1)(A)(i) and (a)(1)(B)(i)(I). There are various categories for spouses, parents, children, and siblings. Following the immediate relative category, the INA sets out five "family preference" categories, which include more distant and independent relatives of U.S. citizens and LPRs: (1) F1—the unmarried, adult (21 or over) sons and daughter of U.S. citizens; (2) F2A—the spouses and unmarried, minor (under 21) children of LPRs; (3) F2B—the unmarried adult (21 or over) sons and daughters of LPRs; (4) F3—the married sons and daughters of U.S. citizens; and (5) F4—the brothers and sisters of U.S. citizens. *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 50 (2014) (citing 8 U.S.C. §§ 1151(a)(1), 1153(a)(1)-(4)).

Accordingly, "[q]ualified immigrants who are the brothers or sisters of citizens of the United States" may be allocated immigrant visas according to a yearly quota system. 8 U.S.C. § 1153(a)(4). The filing date of a petition constitutes the "priority date" and establishes the alien beneficiary's spot in the waiting line for an immigrant visa. 8 C.F.R. § 204.1(c). Once the petition is filed, USCIS must investigate to determine if the petitioner has alleged true facts and whether the intended beneficiary

qualifies for the benefit based upon a valid relationship to the petitioner. 8 U.S.C. § 1154(b). If USCIS determines that the facts of the petition are true and the alien beneficiary is an immediate relative of the petitioner as defined by statute, then USCIS *must* approve the petition and notify the Department of State. *Id.* The Department of State then authorizes the consular official in the alien's country to grant the preference status. *See Bolvito v. Mukasey,* 527 F.3d 428, 430–32 n.4 (5th Cir. 2008) ("the approval of Form I–130 results in the beneficiary of the petition being classified . . . for purposes of issuing a visa for admission to the United States; it does not grant a visa or permanent resident status.").

As noted above, Plaintiff's second petition for her sister Sharanjit was approved on December 6, 2018. Dkt. # 27. Any further relief on the original petition for Sharanjit by this Court however, would not necessarily be moot, as the granting of the petition does not result in a visa being immediately issued to the alien. Congress has limited the number of visas that the government will grant each year depending on the beneficiary's relationship to the petitioner and on the beneficiary's country of origin. 8 U.S.C. § 1151(a)(1) and (c). Within each country of origin and preference category, the State Department then issues visas "to eligible immigrants in the order in which a petition in behalf of each such immigrant is filed with the Attorney General." 8 U.S.C. § 1153(e)(1); *see also* 8 C.F.R. § 245.1(g)(1) (permitting an I–130 beneficiary with approved preference status to apply when he or she "has a priority date on the waiting list which is earlier than the date shown in the [Visa] Bulletin" for the alien's country of origin and preference category). For example, Congress may provide that each year, 65,000 immigrant visas will be available for petitions based on a sibling relationship, where the alien beneficiary is from India. The Department of State makes this number of immigrant visas available and issues them "to eligible immigrants in the order in which a petition in [sic] behalf of each such immigrant is filed . . . ." 8 U.S.C. § 1153(e).

ORDER – 5

Thus, an alien may have to wait several years, or even decades, before a visa number will become available to him or her under the numerical allocation system. *Scialabba*, 573 U.S. at 50. The waiting line to receive a family preference visa "takes time-and often a lot of it." *Id*. "After a sponsoring petition is approved but before a visa application can be filed, a family-sponsored immigrant may stand in line for years-or even decades—just waiting for an immigrant visa to become available." *Id*. For this reason, the priority date assigned to the alien beneficiary, which is established by the date the petition is filed, is critically important. India is currently classified as an "oversubscribed" country, resulting in a cut-off date of more than a decade in the past for applicants from the F4 category. *See* U.S. Dep't of State, Bureau of Consular Affairs, Visa Bulletin, Feb. 2019, *available at* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2019/visa-bulletin-for-february-2019.html.

Here, Plaintiff challenges USCIS' decisions to deny the original I-130 applications on the grounds that the denials violated the USCIS' own regulations, the Administrative Procedure Act ("APA"), and the Due Process Clause. Dkt. # 13. The case essentially hinges on whether USCIS provided Plaintiff with sufficient notice by placing the RFEs and NODs in the mail to Plaintiff's then-existing Mottman Road address. Plaintiff requests that as a form of relief, the Court should remand with orders to reissue the RFEs and restore the priority dates for the petitions filed in 2006.

### 1. Administrative Procedure Act Claim

Plaintiffs' first argument arises under the Administrative Procedure Act ("APA"), though Plaintiff does not specify precisely which subsections of 5 U.S.C. § 706 provide the full basis for her claim. Dkt. # 19 at 5-7. Defendants construe Plaintiff's claim as solely arising under 5 U.S.C. § 706(2)(A), which provides that a district court may review and set aside a final agency action if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.

§ 706(2)(A). Under this standard, "[a]gency action should be overturned only when the agency has 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002) (quoting *Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001)). It is an abuse of discretion if the agency acts as if "there is no evidence to support the decision or if the decision was based on an improper understanding of the law." *Kazarian v. U.S. Citizenship and Immigration Services*, 596 F.3d 1115, 1118 (9th Cir. 2010) (internal citations omitted).

Under Section 706(2)(A), "[a]gency action is valid if a reasonable basis exists for the agency's decision. A reasonable basis exists where the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008) (internal citations and punctuation marks removed). The Section 706(2)(A) standard is "highly deferential, presuming the agency action to be valid." *Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006).

Based on this highly deferential standard, the Court agrees that there is insufficient evidence to indicate that the decisions to deny Plaintiff's petition for Gurpreet were "arbitrary and capricious" within the meaning of Section 706(2)(A). However, Plaintiff also argues that Defendants violated the APA because USCIS did not follow its own regulations by failing to mail the RFE to Plaintiff. Dkt. # 19 at 7. This is a different argument and is most cogently construed as one arising under 5 U.S.C. § 706(2)(D), which explains that Agency action taken "without observance of procedure required by law" may also be set aside. 5 U.S.C. § 706(2)(D). Under the *Accardi* doctrine set forth by the Supreme Court, procedures required by law include

an agency's own regulations and internal operating procedures, even for substantive decisions committed to discretion. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). "The seeds of the *Accardi* doctrine are found in the long-settled principle that the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency." *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991). The Ninth Circuit also explains that it "is the duty of a reviewing court to ensure that an agency follows its own procedural rules." *Kelley v. Calio*, 831 F.2d 190, 191-92 (9th Cir. 1987).

Defendants contend that the RFEs were not final agency decisions subject to this review, and on this fairly obvious point Plaintiff offers little resistance. Dkt. # 22 at 4-6. The larger issue is whether the NODs, which are final decisions that were premised on the lack of response to supposedly delivered RFEs, violated the APA's own regulations. Viewed under this framework, the focus shifts on to whether USCIS followed its own agency regulations and procedural rules in denying Plaintiff's petitions. As Plaintiff notes (Dkt. # 19 at 7), agency regulations require that "a request for evidence or notice of intent to deny will be communicated by regular or electronic mail" and that "routine" service of USCIS documents "consists of mailing the notice by ordinary mail to the affected party and his or her attorney of record at his or her last known address." 8 CFR §§ 103.2(b)(8)(iv), 103.8(a)(1)(i).

On this issue, the Administrative Record before this Court is so sparse and incomplete that it is difficult to draw many inferences at all. Plaintiff is correct in that although the RFEs in the Administrative Record appear to contain Plaintiff's then-active Mottman Road address, there's no direct record of these documents ever being placed in the mail. Moreover, the Administrative Record also has some indications the

documents in question were not finalized.[2] As Defendants note, the RFEs contain multiple typos and in some cases required revision. Dkt. # 24 at p. 3, n.9; ARI-5; *see also* ARII-5 (typo in address). Finally, the Administrative Record contains multiple letters from Plaintiff requesting updates on her siblings' petitions, which contend that she did not receive any "letter that [her] case has been transferred to [the] National Visa Center for further processing" since she filed her petitions. ARI-1; ARII-3. If the Court reviews "only the administrative record," as Defendants urge, the Court cannot definitively find that the RFEs and NODs were sent. Dkt. # 22 at 12.

The situation becomes a bit more complicated, but not clearer, if the Court considers the evidence submitted by the parties outside of the Administrative Record. As an Exhibit to her Motion, Plaintiff submits a sworn declaration explicitly stating that she did not receive the RFEs or NODs. Dkt. # 19, Ex. 1. She also provides evidence indicating that she lived at the Mottman Road address when the RFEs and NODs were issued, and contends that she would have received the documents had they been sent. *Id*. at Exs. 1, 4, 5. In response, Defendants submits a number of declarations from USCIS employees who all generally attest to the then-existing "normal course of business" in the relevant field offices of placing these types of documents in regular mail after they are finalized. Dkt. ## 22-2, 25, 26, 27. However, none of the individuals signing these declarations claim to have any first-hand knowledge of Plaintiff's petition, or of whether the RFEs and NODs were placed in the mail. *See, e.g.*, Dkt. # 22-2, ¶¶ 4, 6, 8. While these individuals support Defendants' argument that there is not much proof that the notices were *not* sent, the Court does not find persuasive the conclusion that this lack of proof constitutes evidence of actual mailing. The problem remains the same: the Court is left with little

---

[2] The RFE for Gurpreet that is in the Administrative Record, for instance, does not appear to be a final version: the first sentence is highlighted, and the RFE is does not contain the signature of the Field Office Director, as is customary for these documents, though Defendants note that was not required at the time. ARII-7; Dkt. # 22-2, ¶ 6.

ORDER – 9

to no indication in the record that USCIS complied with its own regulations by placing the RFEs in the mail.[3]

The parties provide a number of authorities discussing whether mailing of notices establishes a "presumption" of delivery and receipt. Dkt. # 19 at 10; Dkt. # 22 at 8-10. It is true that in the removal context, under agency rules postage sent via first-class mail is entitled to only a "weak" presumption of delivery and receipt, which may be rebutted by a sworn affidavit of non-receipt from the intended recipient and the circumstances of the case. *See, e.g., Salta v. INS*, 314 F.3d 1076, 1079 (9th Cir. 2002) (a sworn affidavit from the alien that neither he nor a responsible party residing at his address received the notice was sufficient, under the circumstances of the case, to rebut the presumption of delivery and entitle an alien to an evidentiary hearing to consider the veracity of his allegations). While interesting, these authorities do not address the key question: the sort of proof necessary to show that notices were placed in mail. For that question, the Court must look elsewhere in the record and law. *See, e.g.*, *Derezinski v. Mukasey*, 516 F.3d 619 (7th Cir. 2008) (when receipt of notice is at issue, a sworn denial of having received notice makes the issue of receipt one of fact); *c.f. Terezov v. Gonzales*, 480 F.3d 558, 562–63 (7th Cir. 2007) ("The government's representation, however, is only as good as the file it searched, and in this case the administrative record is so incomplete as to make it impossible to draw any fair inference from the absence of a particular document. For example, even though Terezov was placed in removal proceedings only because he did not attend his asylum interview, the administrative record includes no evidence showing that notice of that interview ever was sent to him at *any* address.") (emphasis in original).

The Board of Immigration Appeals ("BIA") appears to have encountered a similar issue in the past. In *In Re: Volodymyr Vagner*, for instance, the BIA

---

[3] The Court, thankfully, does not see this becoming much of an issue in the future. As described below, since 2011 USCIS has switched to a practice of sending these types of documents via certified mail with delivery confirmation, which would provide sufficient proof of mailing.

ORDER – 10

considered an appeal of a decision by the Department of Homeland Security ("DHS") denying the visa petition filed by the United States citizen petitioner on behalf of the beneficiary as her husband. *In Re: Volodymyr Vagner*, AXX XX1 335 - PHIL, 2007 WL 3301586, at *1 (BIA Sept. 28, 2007). The DHS deemed the petition abandoned for lack of prosecution, after the parties failed to appear for an interview after an appointment notice was supposedly sent to petitioner's home address via regular mail. *Id.* On appeal, petitioner claimed that she did not receive the interview notice, and the BIA remanded because it found that "it is unclear whether the petitioner was given the required notification of the beneficiary's interview appointment by the DHS." *Id.* The BIA remanded with instructions that a new interview was to be scheduled, with appropriate notice sent, and petitioner should be afforded an opportunity to present any and all available relevant evidence. *Id.*

The circumstances here are similar. As noted above, the record contains little to no evidence of actual mailing of the RFEs and NODs. Plaintiff has provided a sworn declaration that she lived at the address indicated on the RFEs and NODs at the time they were supposed to be mailed and that she did not receive them. The circumstantial evidence also appears to favor Plaintiff's position. Plaintiff would have no apparent motivation to avoid or delay sending the easily acquired documentary evidence requested by the RFES if the result was denial of her petitions and the loss of her priority dates. There also seems to be little dispute among the parties that Plaintiff has, and had, the documents necessary to successfully respond to the RFEs and have her petitions approved. Plaintiff had little trouble supplying this documentation (which were primarily birth records for her siblings) for her refiled petitions, one of which was quickly granted. Dkt. # 27-1. Moreover, Plaintiff received mail from USCIS at the Mottman Road address in 2006, and only reported problems in receipt after the petitions were transferred internally at USCIS to two different offices.

Ultimately, the Court is placed into a difficult position in this case, as it is asked

to make a determination based on limited evidence, a sparse record, and little on-point authority. However, taking into account only the sparse facts currently before it, the Court finds insufficient evidence in the record to indicate that Defendants mailed the RFEs and NODs to Plaintiff. Plaintiff's sworn declaration that she was living at the Mottman Road address and did not receive the notices, coupled with the circumstantial evidence and Defendants' lack of direct contradiction of these claims, provides the Court with sufficient justification in determining the likely violation of agency regulations. Accordingly, based on this finding, the Court concludes that Defendants' denial of Plaintiff's petitions violated Section 706(2)(D). The Court thus **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendants' Cross-Motion on this point.

### 2. Due Process

Plaintiff's other claim is one for a violation of the Due Process Clause. Dkt. # 19 at 8-10. The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. CONST. AMEND. V. "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994).

Here, Plaintiff contends that her interest in the I–130 visa petitions is a protectable property interest because the approval of the petitions is nondiscretionary. Dkt. # 19 at 8. The Court agrees. In *Ching v. Mayorkas*, 725 F.3d 1149 (9th Cir. 2013), the Ninth Circuit held that the grant of an I–130 petition for immediate relative status is a "protected interest [ ] entitled to the protections of due process." *Id*. at 1156. The Ninth Circuit reasoned that the language of the applicable statute led to the conclusion that the "decision of whether to approve an I–130 visa petition is a nondiscretionary one because 'determinations that 'require application of law to

factual determinations' are nondiscretionary." *Id*. at 1155 (citations omitted). The statute analyzed in that case is the one at issue here as well: 8 U.S.C. § 1154(b), which states that:

> After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under section 1153(b)(2) or 1153(b)(3) of this title, the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title or is eligible for preference under subsection (a) or (b) of section 1153 of this title, approve the petition and forward one copy thereof to the Department of State.

8 U.S.C.A. § 1154(b). So long as the facts in the petition are true and the alien on behalf of whom the petition is made is an immediate relative or a relative in one of the four preference categories, the petition *shall* be approved. *Id.* Because siblings of U.S. citizens are recognized family-sponsored immigrants under 8 USC § 1153(a)(4), the I-130 petitions for immediate relative status for these individuals enjoy the same status as those for alien spouses. *Ching*, 725 F.3d at 1156. Both are protected interests entitled to the protections of due process.

The Court finds that Plaintiff had a recognizable property interest in her petitions for her alien siblings. The Court then turns to the question of whether Defendants afforded Plaintiff reasonable notice in denying the petitions due to abandonment. Before the government may take a property interest, the government must provide the owner "notice and opportunity for hearing appropriate to the nature of the case." *Jones v. Flowers*, 547 U.S. 220, 223 (2006) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Due process does not necessarily require actual notice; rather, it requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Jones*, 547 U.S. at 226 (citing *Mullane*, 339 U.S., at 314).

Whatever notice may generally be appropriate in these circumstances, both

ORDER – 13

parties appear to agree that it at least mandates that the RFEs and NODs be sent to Plaintiff in the mail. Dkt. # 19 at 9-10; Dkt. # 22 at 12-13. As stated above, the main dispute is whether the evidence in the record shows whether these documents were placed in the mail or not, and the sparse Administrative Record does not establish this with any certainty. The Court will not belabor to repeat its analysis. Moreover, as Plaintiff notes, the USCIS changed its mailing policies in 2011 to require these types of documents to be sent by certified mail with delivery confirmation. Dkt. # 19 at 9; *see also* Press Release, Department of Justice, *USCIS Improves Delivery of Immigration Documents Through Secure Mail Initiative* (May 12, 2011), *available at* 2011 WL 1633429 (noting change to "Secure Mail Initiative," whereby immigration documents are to be sent certified mail with delivery tracking). While Defendants argue this policy change does not necessarily reflect an ongoing problem of non-receipt, the previous statements of the USCIS acknowledging reports that customers report not receiving documents,[4] coupled with the other evidence in the record, indicates that non-receipt of mailings through regular mail was at the very least a concern. USCIS appears to have had at least some notice that there may be some issues with immigration documents either being placed in regular mail after issuance or reaching their intended destinations.

The Court finds, based on the limited documents the parties have provided it, that Defendants did not mail the RFEs and NODs to Plaintiff in 2009. Accordingly, with this finding, the Court finds that Defendants did not afford Plaintiff due process in denying her petitions due to abandonment. On this point, Plaintiff's Motion is **GRANTED** and Defendants' Cross-Motion is **DENIED**.

---

[4] *See, e.g.*, U.S. Citizen and Immigration Services, *Non-Delivery of Notice*, https://egov.uscis.gov/e-request/displayNDNForm.do ("While your case is pending, we may mail you notices such as a request for additional evidence or a decision notice. There are times when we receive reports that these notices are not received.").

ORDER – 14

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. # 19) is **GRANTED** and Defendants' Cross-Motion for Summary Judgment is **DENIED** (Dkt. # 22). USCIS's denials of Plaintiff's petitions (WAC 06-169-51275 and WAC-06-169-51169) for Gurpreet and Sharanjit are set aside and this matter is **REMANDED** to USCIS with orders that it reissue the RFEs and to provide Plaintiff with a reasonable opportunity to provide the additional evidence requested, re-adjudicate Plaintiff's Form I–130 petitions in accordance with this Order, and restore the 2006 priority dates for both petitions.

Dated this 6th day of March, 2019.

The Honorable Richard A. Jones
United States District Judge